**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Carrillo-Lozano, ) | No. CV-09-1948-PHX-NVW |
| Petitioner, ) | **ORDER** |
| vs. ) | |
| Eric H. Holder, Jr., Attorney General, ) | |
| Respondent. ) | |

On August 18, 2009, the Court of Appeals for the Ninth Circuit directed this Court to make a *de novo* determination of Petitioner's claim of United States citizenship pursuant to 8 U.S.C. § 1252(b)(5)(B), which instructs the district court to decide the matter as if it were an action for declaratory judgment under 28 U.S.C. § 2201. On April 27, 2010, the Court conducted a bench trial at which both Petitioner and Respondent submitted documentary and testimonial evidence relevant to the status of Petitioner's United States citizenship.[1] This order contains contingent findings of fact and describes the remaining course to be taken before conclusions of law may be drawn.

---

[1] Some of the documents admitted into evidence are copies of original birth and death certificates and, as such, are appropriately referred to "certificates" in this order. Other documents, however, are recent certifications of the contents of original birth, death, and marriage records located in the civil registry of the State of Zacatecas in Mexico. Those documents are referred to as "certifications" rather than "certificates".

## I. Legal Standards

It is undisputed that Petitioner's mother is a United States citizen and that Petitioner was born in Mexico on February 25, 1953. In determining the citizenship of a claimant born abroad when one parent is a United States citizen, courts look to the statutes in effect at the time of the claimant's birth. *Chau v. INS*, 247 F.3d 1026, 1028 n.3 (9th Cir. 2001). The sole statute Petitioner relies upon in asserting United States citizenship is INA § 309(c), 8 U.S.C. § 1409,[2] which provided at the time of his birth:

> [A] person . . . born outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

Petitioner therefore bears the burden of proving by a preponderance of the evidence that (1) he was born out of wedlock and (2) his mother had been physically present in the United States or one of its possessions for a continuous period of one year prior to his birth. *See Martinez-Madera v. Holder*, 559 F.3d 937, 940 (9th Cir. 2009) (because foreign birth gives rise to a rebuttable presumption of alienage, a claimant born abroad bears the burden of proving his United States citizenship).

## II. Findings of Fact

### A. Petitioner's Mother

Petitioner's mother was Patricia Lozano, born to Agustin Lozano and Ma. Guadalupe Gallegos. It is undisputed and evident from her birth certificate that Patricia was born in Kansas on June 22, 1927. Although there is no admissible documentary evidence of the length of time she remained in the United States after her birth, Petitioner

---

[2] Until the Final Pretrial Conference in this case, both Respondent and the Court were under the impression that Petitioner was also asserting a claim of United States citizenship under INA § 301(a)(7), 8 U.S.C. § 1401(a)(7). However, at the Conference, Petitioner denied making, and therefore waived, any claim thereunder. His explicit waiver of any such claim was repeated several times in the proceedings.

testified that his mother's younger siblings were born in the United States and that she attended elementary school in Kansas through at least the third grade. Based on that evidence and the inherent likelihood that a person born in the United States remained in the United States for at least one year if younger siblings were also born in the United States, the Court finds that it is more likely than not that Patricia Lozano was physically present in the United States for a continuous period of at least one year prior to Petitioner's birth in 1953.

### B. Petitioner's Father

Petitioner's father was Macario Carrillo Garcia, born to J. Guadalupe Carrillo and Juana Garcia. The evidence is in conflict with respect to his birth date. On the one hand, the certification of his birth record indicates that he was born on March 4, 1933. The certification of his death record, which indicates that he was 32 years old as of September 23, 1965, is consistent therewith. On the other hand, the certifications of the birth records of Petitioner and his siblings, which indicate Macario Carrillo Garcia's age at the time of the births, reflect a variety of conflicting ages, none of which are consistent with Macario Carrillo Garcia's birth and death certifications. Because the certification of Macario Carrillo Garcia's birth record is very likely the most accurate and therefore reliable evidence of his birth date, the Court is persuaded on balance that Macario Carrillo Garcia was born on March 4, 1933.

### C. Whether Petitioner's Parents Were Married at the Time of his Birth

#### 1. Findings Based on Admitted Evidence

The admitted evidence is in conflict with respect to whether Petitioner's parents were married at the time of his birth in 1953. The most probative evidence is a November 9, 2009 certification of a marriage record indicating that Petitioner's parents were married in Zacatecas, Mexico, on July 5, 1948. Although the document incorrectly certifies that both Macario Carrillo Garcia and Patricia Lozano were 18 years old at the time, the other

particulars, including their names, their nationalities, and the names of their parents, are entirely accurate. There is no evidence that Petitioner's parents were ever divorced.

Petitioner argues, however, that the marriage was invalid from its inception because Macario Carrillo Garcia was only 15 years old on July 5, 1948, and had failed to obtain parental consent prior to marrying Petitioner's mother. Pursuant to Zacatecas Domestic Relations Law in effect at the time, the minimum age for marriage was 16 years for males and 14 years for females. *Ley de Relaciones Familiares*, Chapter II, Article 18 (1964). In addition, individuals under the age of 21 were required to obtain parental consent to marry. *Id.*, Chapter II, Article 19. Failure to meet those requirements, however, rendered the marriage merely voidable for a limited period of time. *Id.*, Chapter VII, Articles 108, 109, 123. Minority ceased to be a cause for nullifying the marriage once children were born or once the minor had reached the age of 21 years and neither spouse had previously sought to void the marriage. *Id.*, Chapter VII, Article 18. Lack of parental consent, on the other hand, was a basis for voiding the marriage only for 30 days after the parents became aware of the marriage. *Id.*, Chapter VII, Article 109.

Here Petitioner's oldest sibling and his parents' first child, Juan Antonio Carrillo, was born on June 24, 1949. Therefore, the marriage could be voided on the basis of Macario Carrillo Garcia's minority only until that date. There is simply no evidence that it ever was. There is similarly no evidence that Macario Carrillo Garcia's parents ever took steps to nullify the marriage on grounds of lack of parental consent. If anything, the available evidence suggests that the marriage continued well after July 5, 1948, or at the very least that Petitioner's parents believably held themselves out as married at least up to the time Petitioner was born. By way of example, the certification of Juan Antonio Carrillo's birth record refers to him as the legitimate son of Macario Carrillo and his wife Patricia Lozano. Similarly, the certification of the birth record of Maria Socorro Carrillo Garcia, Petitioner's older sister, indicates that she was born in 1951 and refers to her as the legitimate daughter and second child of Macario Carrillo and his wife Patricia

- 4 -

Lozano, "married by civil and church ceremonies." Finally, the certification of Petitioner's own birth record refers to him as the legitimate son and third child of Macario Carrillo and his wife Patricia Lozano. Therefore, the marriage was not invalid due to minority or lack of consent.

Petitioner maintains in the alternative that whatever marriage his parents may have entered into was legally invalid because his father was already married to another woman. According to Zacatecas Domestic Relations Law in effect at the time, the existence of a prior marriage rendered any subsequent marriage voidable. *Ley de Relaciones Familiares*, Chapter VII, Article 117 (1964). The same is not true, however, of the reverse. A subsequent bigamous marriage could not invalidate a previously existing marriage. *See id.*

Here the only evidence Petitioner offers in support of his contention that Macario Carrillo Lozano was already married to another woman when he married Patricia Lozano is the certification of the birth record of Petitioner's half-brother, J. Victor Carrillo, and the certification of Macario Carrillo Garcia's death record. The birth certification indicates that J. Victor Carrillo was born on July 10, 1952, as the legitimate first child of Macario Carrillo and his wife Tomasa Rodarte. The death certification names Tomasa Rodarte as Macario Carrillo Garcia's spouse as of his September 23, 1965 death. While this is some evidence that Macario Carrillo Garcia was married to Tomasa Rodarte and not Patricia Lozano the year before Petitioner was born in 1953, the Court is not so persuaded.

For one, while there is direct evidence that Macario Carrillo Garcia and Patricia Lozano were married in 1948, there is no direct evidence of a marriage solemnization between Macario Carrillo Garcia and Tomasa Rodarte. Furthermore, there is no evidence that Petitioner's parents were ever divorced. Most importantly, while J. Victor Carrillo's birth certification suggests Macario Carrillo Garcia held himself out as married to Tomasa Rodarte before the time of Petitioner's birth in 1953, it does not prove that they were

married before Macario Carrillo Garcia's marriage to Patricia Lozano. If there were two purported marriages, there is simply no direct evidence indicating which marriage was first in time.

Therefore, the Court is left to draw the most persuasive inferences from existing evidence. The fact that Macario Carrillo Garcia was a mere 15 years old when he married Patricia Lozano in 1948 makes it less than likely that he was already married to another woman at that time. The additional fact that he fathered his first child with Patricia Lozano approximately three years before he fathered his first child with Tomasa Rodarte substantiates that conclusion. The Court therefore finds on balance that Macario Carrillo Garcia's marriage to Patricia Lozano predated any assumed, purported, or actual marriage to Tomasa Rodarte. As such, his marriage to Patricia Lozano could not have been invalidated solely by any subsequent marriage to Tomasa Rodarte.

Petitioner nevertheless maintains that his parents were never married. In support, he offers his own testimony and an affidavit from his deceased brother, Juan Antonio Carrillo, that their mother told them as children and after she returned to the United States that she had never married their father. It is a close question whether to believe their mother told them that. In her circumstances, it is plausible that she would tell her children that, even though it was not true. But other factors cut against the believability of Petitioner's assertion. Petitioner's credibility suffers in light of his demeanor at trial and his strong interest in proving he was born out of wedlock. His brother had a similar interest in aiding Petitioner's cause. The Court assesses the cross-currents of persuasion as in equipose on whether Petitioner's mother told him his parents had never married. Therefore, Petitioner has not carried his burden of persuasion on this particular fact, and the Court finds that Petitioner's mother did not tell Petitioner his parents had never married.

Second, even if Patricia Lozano told her children that she had never married their father, a number of interests other than the truth likely motivated her statements. For her

- 6 -

children's own welfare she likely wished to diminish their attachment to a father who had abandoned them all and whom Petitioner had never seen. She also likely hoped for a new married life in her native land, which she found in a marriage to Francisco Orozco Alcaraz in 1961 when Petitioner was 8 years old. By holding herself out as never married to the children's father, she avoided a social or legal cloud over her hopes and her later married life. Third, and most importantly, any such statements by Petitioner's mother are persuasively contradicted by the several official documents that establish the existence of a marriage between Petitioner's parents.

### 2. Unresolved Evidentiary and Legal Issues

Notwithstanding the above findings, the Court does not yet reach a conclusion as to whether Petitioner is a United States citizen under INA § 309(c), 8 U.S.C. § 1409 (1950). To counter Respondent's proof at trial of Petitioner's parents' marriage, Petitioner offered into evidence proposed Exhibit 4B, a document that purports to be a handwritten account of his parents' marriage ceremony signed by his mother but possibly not his father. Petitioner maintains that because his father did not sign the document, his parents' purported marriage is void. Upon inquiry by the Court, counsel for Respondent acknowledged that Petitioner's unauthenticated and possibly incomplete proposed exhibit was obtained by Immigration and Customs Enforcement attachees based in Monterrey, Mexico. Respondent delivered it to Petitioner, who offered it into evidence. Because the document lacked attestation and final certification, it was tentatively excluded pursuant to Fed. R. Civ. P. 44(a)(2) and Fed. R. Evid. 901(a).

The Court indicated, however, that it may reconsider its ruling at a later time. In addition, because the congruency between the handwritten document and the November 9, 2009 certification of Petitioner's parents' marriage record suggests that the certification may have been derived in whole or in part from the handwritten document, the Court inquired into the possibility of establishing a foundation for and obtaining a complete copy of the handwritten document. Respondent indicated that such a task would be

extremely time-consuming and burdensome.  Respondent also argued that pursuant to *Codigo Civil para el E.L. y S. De Zacatecas*, Title VI, Chapter I, Article 46 (1964), the handwritten document cannot be considered evidence of Petitioner's parents' marital status because the November 9, 2009 marriage certification is conclusive evidence of Petitioner's parents' marital status.  Article 46, translated into English, states that a person's marital status is only proven by the registry's respective records and that no other document is admissible to prove marital status.  At this time, however, it is unclear whether the provision applies to *certifications* of records in the registry, such as the November 9, 2009 certification of Petitioner's parents' marriage record, in addition to the original records themselves.  There is also uncertainty as to whether the handwritten document is a copy of the original record from which the certification was derived.

To avoid unnecessary expense and delay, the Court issued an order on May 3, 2010, directing Respondent to submit additional briefing on the legal significance of what Petitioner's excluded Exhibit 4B purports to show.  If the possible absence of Macario Carrillo Garcia's signature on the document has no material bearing on the validity of his marriage to Patricia Lozano, there is no need to ascertain its origin or obtain a complete copy.  However, Respondent subsequently moved for a substantial extension of time in which to submit the additional briefing, explaining that the Law Library of Congress would be unable to render assistance within the time provided by the order and that the Department of State would be asked for assistance.  (Doc. # 156.)

The legal significance of Petitioner's proposed Exhibit 4B turns on seemingly straightforward but as-of-yet unknown principles of Mexican law, and more specifically, Zacatecas law.  Therefore, the Court concludes in the interest of economy that it should appoint an independent expert pursuant to Fed. R. Evid. 706(a) to render a written opinion on the legal significance of proposed Exhibit 4B under principles of Zacatecas law in 1948.  The Court has conferred with and obtained the consent of Lic. Nicolas Jesus Olea Osuna to serve as a court-appointed expert.  Mr. Olea is a Mexican attorney of the

highest skill, reputation, and ethical standards, long known to this Court. His curriculum vitae is attached to this order. Mr. Olea will be called upon to give a written opinion on the following questions:

(1) Assuming without deciding that Exhibit 4B is a copy of the original record of Petitioner's parents' marriage solemnization on July 5, 1948, and assuming Petitioner's father did not sign the original record, did the absence of his signature invalidate the marriage under Zacatecas law?

(2) If so, is the November 9, 2009 certification of Petitioner's parents' marriage record conclusive evidence of the content of the original record, so as to preclude consideration of direct evidence of the original record to prove that Petitioner's father did not sign the original record?

In addition to providing a written opinion on the above issues in English, Mr. Olea will be asked to include copies of the applicable provisions of Zacatecas law, together with English translations thereof, in an appendix to the opinion. Mr. Olea's fees will be assessed against Respondent pursuant to Fed. R. Evid. 706(b), as Petitioner lacks the resources to pay his share of the fees.

If the Court concludes, after consideration of the opinion of Mr. Olea, that the assumed absence of Macario Carrillo Garcia's signature on proposed Exhibit 4B would void his marriage to Patricia Lozano, the Court will consider requiring Respondent to explore the provenance of the document and obtain a complete copy thereof to determine whether or not it includes Macario Carrillo Garcia's signature.

IT IS THEREFORE ORDERED that Lic. Nicolas Jesus Olea Osuna is appointed pursuant to Rule 706(a), Federal Rules of Evidence, to render a written opinion as provided in this order.

Dated: June 8, 2010.

_____
Neil V. Wake
United States District Judge

**NICOLÁS JESÚS OLEA OSUNA**
Tetabiate 859 Oriente, Ciudad Obregón, Sonora, 85010
(52) 644 4151311
njolea@gmail.com

---

## EDUCATION

| | |
|---|---|
| **1971-1977** | **University of Sonora,** Hermosillo, Sonora, México. Licenciate in Legal Sciences (J.D. Equivalent). Thesis: "Testamentary Trust". |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| **1987-Present** | **Olea Osuna Abogados, S.C.**, Obregón, Sonora. Focused on corporate law, banking and foreign investment regulations, administrative law, commercial law, agrarian law, civil law, in-bond industry, real estate law and complex litigation in such areas. Worked with foreign nationals and Mexican subsidiaries of foreign entities |
| **1980-1987** | **Empresas Matco, S.A. de C.V.,** Obregón, Sonora. Worked as head of legal and credit and collections departments. |
| **1978-1981** | **Unibanco, S.A.,** Obregón, Sonora. Head of legal and trust departments. |
| **1977-1979** | **Prosecutors Office,** Nogales, Sonora. Worked as the City Attorney. |
| **1976-1978** | **Third Criminal Court,** Hermosillo, Sonora. Law clerk in charge legal proceedings and drafting judicial resolutions. |
| **1975-1977** | **Third Civil Court,** Hermosillo, Sonora. Law clerk in charge of Notifications Department. |

## ASSOCIATIONS

| | |
|---|---|
| **2009-Present** | **La Salle Northwestern University, A.C.** Member of the Board of Directors. |
| **2008-Present** | **Monterrey Institute of Technology (ITESM) in Ciudad Obregon's Campus.** Member of the Board of Directors. |
| **2007-Present** | **Megacable, S.A.B. de C.V.** Member of the Board of Directors, Chairman of Corporate Governance Committee and member of the Audit Committee. Megacable is the largest cable provider in the country and the third largest telecommunications company in Latin America. |

| | | |
|---|---|---|
| **1998-Present** | | **Red Cross Mexico in Ciudad Obregon.** Member of the Board of Directors. |
| **1987-Present** | | **Empresas Matco, S.A. de C.V., Inmobiliaria Matco, S.A. de C.V.** Commissioner supervising the administration of both companies. Empresas Matco is a Caterpillar dealer in 4 states of northwestern Mexico. |
| **1994-1998** | | **Cajeme City Council.** President of Public Security Committee. |
| **1994-1997** | | **Sister Cities Committee Obregon-Tucson.** President. |

**LANGUAGES**
Spanish (native speaker), English (fluent).